IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JACOB T.,[1]

Plaintiff,

v.

ANDREW M. SAUL, Commissioner of Social Security,

Defendant.

Case No. 3:19-cv-01151-SB

**OPINION AND ORDER**

**BECKERMAN, U.S. Magistrate Judge.**

Jacob T. ("Plaintiff") brings this appeal challenging the Commissioner of Social Security's ("Commissioner") denial of his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. The Court has jurisdiction to hear this appeal pursuant to 42 U.S.C. § 405(g), and the parties have consented to the jurisdiction of a U.S. Magistrate Judge under 28 U.S.C. § 636(c)(1). For the reasons explained below, the Court reverses the

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

Commissioner's decision because it is based on harmful legal error and not supported by substantial evidence.

**STANDARD OF REVIEW**

The district court may set aside a denial of benefits only if the Commissioner's findings are "'not supported by substantial evidence or [are] based on legal error.'" *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). Substantial evidence is defined as "'more than a mere scintilla [of evidence] but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*. (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

The district court "cannot affirm the Commissioner's decision 'simply by isolating a specific quantum of supporting evidence.'" *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). Instead, the district court must consider the entire record, weighing the evidence that both supports and detracts from the Commissioner's conclusions. *Id*. Where the record as a whole can support either the grant or denial of Social Security benefits, the district court "'may not substitute [its] judgment for the [Commissioner's].'" *Bray*, 554 F.3d at 1222 (quoting *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007)).

**BACKGROUND**

**I. PLAINTIFF'S APPLICATION**

Plaintiff was born in November 1988, making him twenty-seven years old on April 19, 2016, the alleged disability onset date. (Tr. 68.) Plaintiff has a four-year degree in aeronautical science and a commercial instrument pilot license, and past relevant work as a pilot, safety investigator, crew resource specialist, meteorologist, waiter, sweeper operator, and retail

courtesy clerk. (Tr. 24-25, 41, 61-63.) In his DIB application, Plaintiff alleges disability due to (1) depression, (2) anxiety, (3) cauda equina syndrome ("CES"), (4) degenerative disc disease, (5) a herniated disc, (6) retrolisthesis, (7) a perineural cyst, (8) facet arthropathy, (9) a neurogenic bladder, and (10) numbness in his groin and leg.[2] (Tr. 68.)

The Commissioner denied Plaintiff's application initially and upon reconsideration, and on June 4, 2018, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 13.) Plaintiff and a vocational expert ("VE") appeared and testified at a hearing held on November 29, 2018. (Tr. 36-67.) On January 29, 2019, the ALJ issued a written decision denying Plaintiff's DIB application. (Tr. 13-27.) On May 22, 2019, the Appeals Council denied Plaintiff's request for review, making the ALJ's written decision the final decision of the Commissioner. (Tr. 1-6.) Plaintiff now seeks judicial review of the ALJ's decision. (Compl. at 4.)

## II. THE SEQUENTIAL PROCESS

A claimant is considered disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12

[2] To be eligible for DIB, "a worker must have earned a sufficient number of [quarters of coverage] within a rolling forty quarter period." *Herbert v. Astrue*, No. 07-cv-01016, 2008 WL 4490024, at *4 n.3 (E.D. Cal. Sept. 30, 2008). Workers accumulate quarters of coverage based on their earnings. *Id.* Typically, "the claimant must have a minimum of twenty quarters of coverage [during the rolling forty quarter period to maintain insured status]. . . . The termination of a claimant's insured status is frequently referred to as the 'date last insured' or 'DLI.'" *Id.* (citations omitted). Thus, Plaintiff's date last insured of December 31, 2022 (*see* Tr. 13) reflects the date on which his insured status will terminate based on the prior accumulation of quarters of coverage. If Plaintiff establishes that he was disabled on or before December 31, 2022, he is entitled to DIB. *See Truelsen v. Comm'r Soc. Sec.*, No. 2:15-cv-02386, 2016 WL 4494471, at *1 n.4 (E.D. Cal. Aug. 26, 2016) ("To be entitled to DIB, plaintiff must establish that he was disabled . . . on or before his date last insured." (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999))).

months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five steps are: (1) whether the claimant is currently engaged in any substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the claimant can return to any past relevant work; and (5) whether the claimant is capable of performing other work that exists in significant numbers in the national economy. *Id.* at 724-25. The claimant bears the burden of proof for the first four steps. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001). If the claimant fails to meet the burden at any of those steps, the claimant is not disabled. *Id.*; *Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987).

The Commissioner bears the burden of proof at step five of the sequential analysis, where the Commissioner must show the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett*, 180 F.3d at 1100. If the Commissioner fails to meet this burden, the claimant is disabled. *Bustamante*, 262 F.3d at 954 (citing *Tackett*, 180 F.3d at 1098-99).

**III. THE ALJ'S DECISION**

The ALJ applied the five-step sequential evaluation process to determine if Plaintiff is disabled. (Tr. 13-27.) At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since April 19, 2016, the alleged disability onset date. (Tr. 15.) At step two, the ALJ determined that Plaintiff suffered from the following severe impairments: "[H]erniated nucleus pulposus (HNP) at L5-S1 with cauda equina syndrome and degenerative disc disease of the lumbar spine with facet arthropathy status/post laminectomy and discectomy

at L5-S1; chronic sciatica; [and a] neurogenic bladder." (Tr. 15.) At step three, the ALJ concluded that Plaintiff did not have an impairment that meets or equals a listed impairment. (Tr. 17.) The ALJ then concluded that Plaintiff had the residual functional capacity ("RFC") to perform light work, subject to these limitations: (1) Plaintiff can occasionally climb ramps and stairs, (2) Plaintiff cannot climb ladders, ropes, or scaffolds, (3) Plaintiff can occasionally balance, stoop, crouch, crawl, and kneel, (4) Plaintiff needs to be able to "change positions between sitting and standing in 30-60 minute increments such that he can sit for 4-6 hours in an 8-hour day," and (5) Plaintiff needs to "avoid concentrated exposure to hazards." (Tr. 17.) At step four, the ALJ concluded that Plaintiff was not disabled because Plaintiff could perform his past relevant work as a pilot, safety investigator, crew resource specialist, and meteorologist. (Tr. 24.)

## DISCUSSION

### I. PLAINTIFF'S SYMPTOM TESTIMONY

Plaintiff's primary argument on appeal is that the ALJ failed to provide clear and convincing reasons for discounting his testimony.[3] (*See* Pl.'s Opening Br. at 6-24, addressing pages six through eight of the ALJ's decision, Tr. 18-20, which is the portion of the ALJ's decision addressing Plaintiff's testimony and the ALJ's reasons for discounting it). As explained below, the Court agrees that the ALJ committed harmful error in discounting Plaintiff's testimony.

///

///

[3] The Court liberally construes Plaintiff's briefs because he is self-represented. *See* *Horrod v. Comm'r Soc. Sec. Admin.*, No. 6:15-cv-00698-HZ, 2015 WL 9308263, at *2 (D. Or. Dec. 21, 2015) (explaining that the district court has "a duty to liberally construe" a Social Security claimant's "*pro se* brief[s]" (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007))).

**A. Applicable Law**

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited[.]" *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)). Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives specific, clear and convincing reasons for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citation and quotation marks omitted).

Under Ninth Circuit case law, clear and convincing reasons for rejecting a claimant's subjective symptom testimony "include conflicting medical evidence, effective medical treatment, medical noncompliance, inconsistencies in the claimant's testimony or between her testimony and her conduct, daily activities inconsistent with the alleged symptoms, and testimony from physicians and third parties about the nature, severity and effect of the symptoms complained of." *Bowers v. Astrue*, No. 11-cv-583-SI, 2012 WL 2401642, at *9 (D. Or. June 25, 2012) (citing *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008), *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007), and *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997)).

**B. Analysis**

There is no evidence of malingering here and the ALJ determined that Plaintiff provided objective medical evidence of underlying impairments which might reasonably produce the symptoms alleged. (*See* Tr. 18, reflecting that the ALJ determined that Plaintiff's "medically

determinable impairments could reasonably be expected to cause the alleged symptoms"). The ALJ was therefore required to provide specific, clear, and convincing reasons for discrediting Plaintiff's symptom testimony. *See Ghanim*, 763 F.3d at 1163. The ALJ failed to meet that standard here.

**1. Daily Activities**

The ALJ discounted Plaintiff's testimony based on his daily activities. (*See* Tr. 28, concluding that Plaintiff's "daily activities" are "inconsistent" with his "statements about the intensity, persistence, and limiting effects of his symptoms"). An ALJ may discount a claimant's testimony based on activities that are incompatible with the claimant's testimony regarding the severity of his symptoms. *See Burrell v. Colvin*, 775 F.3d 1133, 1137-38 (9th Cir. 2014) ("Inconsistencies between a claimant's testimony and the claimant's reported activities provide a valid reason for an adverse credibility determination."); *Garrison*, 759 F.3d at 1016 (explaining that a claimant's activities have "bearing on [his or her] credibility" if the reported "level of activity" is "inconsistent with [the claimant's] claimed limitations"); *Ghanim*, 763 F.3d at 1165 ("Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination.").

Plaintiff argues that the ALJ erred in discounting his testimony based on his reported activities. (*See* Pl.'s Opening Br. at 7-14, addressing the last paragraph on page six of the ALJ's decision and arguing that the ALJ's reliance on his reported activities was misplaced). The Court agrees.

An ALJ errs when she "'consider[s] evidence about [a claimant's] activities selectively, [and] ignore[es] evidence that contradict[s] her findings,'" or fails to "'*specifically* identify the testimony [from the claimant] she . . . finds not to be credible and . . . explain what evidence undermines the testimony.'" *Shelley V. v. Saul*, No. 6:18-cv-01760-SB, 2020 WL 1131489, at

*3-4 (D. Or. Mar. 9, 2020) (quoting *Scrogham v. Colvin*, 765 F.3d 685, 698-99 (7th Cir. 2014), and *Rocha v. Berryhill*, 771 F. App'x 447, 448 n.2 (9th Cir. 2019)).

The ALJ here concluded that Plaintiff's "allegation[]" that he is "generally bedbound due to his pain and urinary symptoms" is inconsistent with Plaintiff's ability to prepare simple meals, perform a few household chores such as laundry, drive, manage his personal finances, watch movies, play board or computer games with friends and family, exercise (e.g., pull-ups and "light" weightlifting),[4] read, shop in stores, and use the internet, as well as Plaintiff's desire to "start a blog about food carts." (Tr. 18.) As explained below, the Court finds that substantial evidence does not support the ALJ's discounting of Plaintiff's testimony based on these activities.

The record reveals that Plaintiff often needs to lie down to alleviate his pain and urinary symptoms. (*See* Tr. 45, testifying that the "[m]ajority of [Plaintiff's] day is [spent] laying down"; Tr. 316, reporting that he spends the "majority" of his day "laying flat on [his] back in bed" because it is the only position that "provides some type of relief from [his] symptoms"; Tr. 384, noting "some improvement when lying supine"). Contrary to the ALJ's findings, Plaintiff's testimony regarding his need to lie down is not inconsistent with his reported activities. Indeed, Plaintiff testified that his activity level is quite limited:

- Plaintiff plays computer games from his bed and uses a "jerry-rigged" computer "monitor that swings over on an arm" across his bed to do so. (Tr. 46, 49.)
- Plaintiff will "lay down on [a] couch" next to "a coffee table" to play board games. (Tr. 49.)

[4] Plaintiff explains that he merely hangs from a pull-up bar to relieve his back pain. (Pl.'s Opening Br. at 9.)

- Plaintiff does not travel, but does leave the house sometimes to eat, attend medical appointments, and shop "once or twice a month" for "15 to 20 minutes," which is consistent with his desire to start a blog about food carts someday. (Tr. 47, 49, 318, 1101; *but cf.* Tr. 18, showing that the ALJ found that Plaintiff's desire to start a food cart blog someday is inconsistent with his testimony about needing to lie down, as "it would be difficult to do if he was always in bed and not getting out and visiting any food carts").
- Plaintiff's mother does most of the cooking for his family, but Plaintiff does prepare some simple meals (e.g., microwavable tamales) as it only requires that him to be on his feet for five to ten minutes. (Tr. 46-47, 317; *see also* Tr. 317, showing that Plaintiff can "no longer cook large healthy meals like [he] used to all the time").
- Plaintiff only drives for "a few minutes . . . at least two to three times a week" to attend medical appointments or go to the store, assuming he has not already taken his medication and cannot get a ride from a family member or friend. (Tr. 39, 53, 318.)
- Plaintiff's household chores consist of spending five minutes wiping down a counter and table and thirty to sixty minutes "with breaks [and] rest" doing his "own laundry." (Tr. 47, 318.)
- Plaintiff participated in an "online" computer science class because his psychologist recommended that he do so. (Tr. 1699; *see also* Tr. 46, 49, describing Plaintiff's "jerry-rigged" computer "monitor that swings over on an arm" across his bed.)

- Plaintiff's exercise consisted of (1) "very light weights" because heavy weight is "very painful," and (2) doing some pull-ups, both of which are consistent with Plaintiff's testimony, history of "emergency spinal decompression surgery," and need for spinal decompression therapy, such as mechanical and manual traction and an inversion table. (Tr. 278, 348, 608, 1007-08, 1096, 1120, 1148, 1420, 1440, 1443.)
- Plaintiff also reads, watches movies, uses the internet, and manages his finances (Tr. 18, 319-20, 725, 1096), but all of these activities can be accomplished while lying down.

Given this evidence, the ALJ erred in finding that Plaintiff's testimony is undermined by his daily activities, because it is evident that the ALJ ignored evidence that contradicted her findings.

**2. Medical Improvement**

The Commissioner also argues that the ALJ appropriately discounted Plaintiff's symptom testimony on "the basis of medical improvement," noting that on August 22, 2018, over two years after Plaintiff's alleged disability onset date, Plaintiff's treating provider stated that (1) Plaintiff's urinary issues had "stabilized," (2) tibial nerve stimulation had "improved" Plaintiff's overall symptoms, and (3) a medication had "resolve[d]" Plaintiff's "internal diffuse pressure pain." (Def.'s Br. at 11, citing Tr. 1699.) The Court is not persuaded by the Commissioner's argument.

The treatment note in question makes clear that although Plaintiff's urinary issues had stabilized, Plaintiff was still suffering from "frequency and urgency issues" that "gain[ed] intensity [with] activity (walking, standing, etc.)" and were only "improved by l[]ying down."

(Tr. 1699.) These reports are consistent with Plaintiff's testimony, as described above, and are not inconsistent with a claim of disability. Plaintiff's urgency and frequency issues, as distinct from his pain issues, present their own limitations, which the ALJ did not address. Furthermore, even if some of Plaintiff's urinary issues had "stabilized," that does not mean that Plaintiff is able to work full-time. *See Timothy W. v. Berryhill*, No. 1:17-cv-01041-SB, 2018 WL 6817030, at *10 (D. Or. Oct. 16, 2018) ("'A doctor's notation that a condition is 'stable' during treatment does not necessarily support the conclusion that the patient is able to work.'" (quoting *Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 357 (3d Cir. 2008)); *see also Kohler v. Astrue*, 546 F.3d 260, 268 (2d Cir. 2008) ("[T]he ALJ consistently interpret[ed] reports that [the claimant's] condition has been 'stable' to mean that [the claimant's] condition has been good, when the term could mean only that her condition has not changed.").

Additionally, although tibial nerve stimulation resulted in some improvement, the August 22, 2018 treatment record makes clear that Plaintiff continued to suffer from "chronic pain," which his provider characterized as merely "stable." (Tr. 1699.) As to the resolution of Plaintiff's internal "diffuse pressure pain," Plaintiff explained during the hearing that he suffers from "dull pain" and "a lot of pressure" in his back, but he also suffers from "sharp pain . . . coming from [his] nerve," which is "extremely intense from [his lower left back through [his] left butt cheek." (Tr. 49-50.)

For these reasons, the Court finds that the ALJ erred in finding that Plaintiff's testimony is undermined by medical improvement.

### 3. Medical Evidence

The ALJ also discounted Plaintiff's testimony on the ground that the medical evidence did not "support[]"/"corroborate" Plaintiff's claim that he is disabled, or "warrant greater limitations" than those set forth in the ALJ's RFC assessment. (*See* Tr. 19-21, discounting

Plaintiff's testimony based on conflicting medical evidence and summarizing the medical evidence that the ALJ believed supported her RFC assessment; Def.'s Br. at 7-10, arguing that the ALJ appropriately discounted Plaintiff's testimony based on conflicting medical evidence). An ALJ may discount a claimant's symptom testimony on the ground that it is inconsistent with the medical evidence. *See Watkins v. Comm'r of Soc. Sec. Admin.*, 611 F. App'x 903, 904 (9th Cir. 2015) (holding that the ALJ met the clear and convincing reasons standard and noting that the ALJ discounted the claimant's testimony because it was "inconsistent with . . . the medical evidence"). Here, however, substantial evidence does not support the ALJ's decision to discount Plaintiff's testimony based on conflicting medical evidence.

To receive DIB, Plaintiff "need only establish a physical impairment that is expected to last for a continuous period of not less than twelve months which renders [him] unable to engage in substantial gainful activity." *Dull v. Comm'r of Soc. Sec.*, No. 13-11954, 2014 WL 12573404, at *5 (E.D. Mich. July 21, 2014). The following medical evidence suggests that Plaintiff has proven as much, and that the ALJ's interpretation of Plaintiff's medical evidence was unreasonable:

- April 19, 2016: Plaintiff alleged the onset of disability due primarily to spine-related impairments. (Tr. 13, 85.)
- April 27, 2016: Plaintiff underwent an MRI of his lumbar spine, which showed a "[l]arge left central and subarticular disc herniation at L5-S1 [which] distort[ed] the thecal sac and left S1 nerve root." (Tr. 450; *see also* Tr. 461, demonstrating that Plaintiff and his provider believed that his back issues may have been caused by "weightlifting or the G forces he's exposed to with flying jets").

- For several months, Plaintiff pursued non-surgical treatment and, on one occasion, reported that he was feeling "80-85% better," even though he was "still having some mild numbness in his groin area and . . . some back pain." (Tr. 426.) However, Plaintiff's improvement was short-lived, as his orthopedic surgeon noted. (*See* Tr. 430, noting that Plaintiff's surgeon stated that Plaintiff underwent "multiple nonoperative treatments" over six months but was still experiencing urinary urgency, "difficulty emptying his bladder," "severe back pain," worsening numbness, tingling, and "pain going into his left leg").
- As a result, in late November 2016, Plaintiff decided that he was now "ready to proceed with surgical treatment." (Tr. 431-32.) Plaintiff's orthopedic surgeon performed a "[l]eft L5-S1 disketomy" to address, among other things, Plaintiff's "very large" disk herniation "with nerve root compression." (Tr. 431-32.)
- On February 13, 2017, Plaintiff's provider referred him to a neurosurgeon, Mamerhi Okor, M.D. ("Dr. Okor"), because Plaintiff continued to complain about lumbar pain and urinary urgency and reported that "all of his preop symptoms returned" within two weeks of his surgery. (Tr. 384.) Plaintiff also reported that sitting and standing "exacerbate[d] all of his symptoms." (Tr. 384.) Dr. Okor determined that (1) a December 2016 MRI "may" reflect "postop changes from [the November 2016] left L5-S1 laminotomy and discectomy" because there was a "[s]uggestion of left lateral recess stenosis at L5-S1 with impingement of the left S1 nerve root," and (2) further surgical

treatment, e.g., a "redo of [the] left L5-S1 lamino-foraminotomy," was appropriate given Plaintiff's "symptomatology and that it had been refractory to non-operative treatment." (Tr. 387.) Plaintiff, however, decided that he wanted to "continue with non-operative management" after Dr. Okor explained the risks associated with another surgery, including, but not limited to, neurologic injury that "could lead to motor and sensory loss in [Plaintiff's] lower extremities," "substantial blood loss which may require a blood product transfusion," "myocardial infraction," "death," and "mechanical instability which would necessitate a lumbar fusion to achieve symptoms relief." (Tr. 387.)

- April 11, 2017: Approximately one year after the alleged onset date, Plaintiff reported that he had "gotten worse with his back" over "the last couple of months," and that he was still having issues with his bladder. (Tr. 443.) Plaintiff's orthopedic surgeon noted that (1) he did not have a "good explanation for Plaintiff's urgent bladder, but Plaintiff "seem[ed] to [have] gotten some explanation from [a] neurologist," (2) his thoughts were "mixed" about an "exploratory surgery and revision decompression" because there were "no guarantees," but he did believe that it would be something they "could do" if Plaintiff "continue[d] to not get better," (3) Plaintiff was "probably" dealing with "radiculitis and scar tissue," and (4) he thought it was "reasonable" to try epidural steroid injections, as Plaintiff had suggested. (Tr. 443.)

///

- April 27, 2017: Plaintiff's lumbar examination revealed a "positive sacroiliac joint test on the left," a "positive Patrick-Fabere test on the left," a "straight leg raise positive on the right and on the left," hypomobility during facet testing, and pain with facet loading. (Tr. 452.) Plaintiff's provider diagnosed him with chronic lower back pain, a herniated lumbar intervertebral disc, lumbar radiculopathy, and CES, and explained that he believed that it was "hard to say how much improvement [Plaintiff] will see over time, if at all[.]" (Tr. 452.)
- October 30, 2017: Plaintiff's treating provider noted that Plaintiff was "frustrated" because he had gone out to eat and "couldn't even walk back to the car after dinner and seating," Plaintiff's pain was "not improved by current treatment," and Plaintiff's condition had "worsened" since his last office visit. (Tr. 1101.)

In light of this evidence, the ALJ erred in discounting Plaintiff's testimony on the ground that the medical evidence did not support his claim of disability, because the record (*see supra* Parts I.B.1-3) suggests that Plaintiff suffered from physical impairments that lasted for at least twelve months and rendered him unable to engage in substantial gainful activity. *See Kelly v. Berryhill*, 732 F. App'x 558, 561-62 (9th Cir. 2018) (rejecting the ALJ's assertion that medical evidence "did not indicate disabling impairment," and explaining that the ALJ erred by "'cherry-pick[ing]" normal findings and "ignoring" a number of abnormal clinical findings); *see also Taylor v. Berryhill*, 720 F. App'x 906, 907 (9th Cir. 2018) (finding that a "lack of objective medical evidence cannot be the sole reason to discredit [a claimant's symptom] testimony").

///

#### 4. Conclusion

For all of these reasons, the Court concludes that the ALJ failed to provide clear and convincing reasons, supported by substantial evidence, for discounting Plaintiff's symptom testimony.[5]

## II. VE HYPOTHETICAL

Plaintiff argues that the ALJ erred by failing to present a complete and accurate hypothetical to the VE. (*See* Pl.'s Opening Br. at 26-27). The Court agrees, for the reasons discussed above. *See Bray*, 554 F.3d at 1228 ("If an ALJ's hypothetical does not reflect all of the claimant's limitations, then 'the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy.'" (quoting *DeLorme v. Sullivan*, 924 F.2d 841, 850 (9th Cir. 1991))). On remand, the ALJ will reformulate Plaintiff's RFC and present a complete hypothetical to the VE (i.e., a hypothetical that reflects all of Plaintiff's credible limitations).[6] *See generally Garrison*, 759 F.3d at 1020 (explaining that a district court

[5] The Court also finds that the ALJ's RFC assessment and decision fail to account for or address the fact that Plaintiff reportedly suffers from medication side effects. (*See* Tr. 53-54, 853, 1699, 1768, showing, among other things, that Plaintiff is taking Gabapentin and it makes him feel like a "zombie," Plaintiff is prohibited from driving after taking certain medications, and one medication causes fatigue and confusion). On remand, the ALJ shall take those medication side effects into account. *See Hirshon v. Comm'r, Soc. Sec. Admin.*, No. 6:16-cv-02265-BR, 2018 WL 1093877, at *8 (D. Or. Feb. 28, 2018) ("[T]he ALJ erred when he failed to provide legally sufficient reasons supported by substantial evidence in the record for failing to consider Plaintiff's limitations caused by the side-effects of her medications in his assessment of Plaintiff's RFC."); *see also Levi B. v. Comm'r of Soc. Sec.*, No. 2:19-cv-00196, 2020 WL 582863, at *5 (W.D. Wash. Feb. 6, 2020) (declining to address an assignment of error on appeal regarding step five, "[b]ecause the ALJ's re-evaluation of Plaintiff's medication side effects may result in additional RFC limitations").

[6] Plaintiff has attached evidence to his opening brief, including a disability assessment from one of his providers and a VA disability award letter. (*See* Pl.'s Opening Br. Attachs. 1-5). The Commissioner moves to strike these exhibits and, in so moving, argues that Plaintiff, who is proceeding *pro se*, waived the legal argument necessary to introduce such evidence on appeal. (Def.'s Br. at 4-5.) The Court denies as moot the Commissioner's motion to strike because the case will be remanded for further proceedings consistent with this opinion. On remand, Plaintiff

cannot remand for an award of benefits when, as here, further proceedings would serve a "useful purpose").

## CONCLUSION

For the reasons stated, the Court REVERSES the Commissioner's decision and REMANDS this case for further proceedings consistent with this opinion.

**IT IS SO ORDERED.**

DATED this 3rd day of August, 2020.

HON. STACIE F. BECKERMAN
United States Magistrate Judge

---

will have the opportunity to supplement the record in support of his application for benefits. The Court also declines to address Plaintiff's remaining assignments of error (i.e., his arguments regarding the ALJ's findings at step three, the ALJ's duty to develop the record, the need for a medical expert, etc.). Plaintiff will have an opportunity to revisit these issues on remand.